### DUPONT *v.* PICHON.

### *Privilege of foreign minister.*

A *charge d'affaires* is entitled to privilege from arrest, until his return home, although he has been for some months superseded by a minister plenipotentiary; the detention of the former being occasioned by his official business: the court will discharge him from arrest, without requiring proof from the department of state, of his reception in his diplomatic character, by president.

THE plaintiff had issued a *capias* against the defendant, in an action upon the case, &c., and a citation was served upon him, in the following terms :

* "SIR.—You are hereby cited to show your cause of action, and [*322 why the defendant, claiming privilege as *charge d'affaires* of the French republic, should not be discharged from the process issued against him, at the city-hall, in the city of Philadelphia, at 10 o'clock, to-morrow forenoon.

Philadelphia, 1st of March 1805. EDWARD SHIPPEN."

The citation was returned to the judges of the supreme court, then holding a court of *Nisi Prius ;(a)* and after argument by *Du Ponceau* and *Dallas*, for the defendant ; and by *Ingersoll* and *Wallace*, for the plaintiff, the following order was made by the judges, who did not think, that individually, or sitting at *nisi prius*, they could quash the process :

"It is ordered, that the defendant be discharged on common bail ; and that at the next supreme court, in bank, on the 4th day of this instant March, it may be considered by that court, whether the defendant should, or should not, be discharged from the process issued against him ; or whether he should be held to bail, and the present order be discharged."

At the opening of the court, on the first day of the term (all the judges being present), *Du Ponceau* and *Dallas* moved, that the defendant be discharged absolutely from the process. They produced Mr. Pichon's credentials, by which it appeared, that he had not only been appointed commissary-general of commercial relations, but also *charge d'affaires* of the French republic ; his continuance in the latter character, however, being limited, until a minister plenipotentiary should arrive in the United States from France. It appeared by Mr. Pichon's deposition, that the minister, General Toureau, had arrived in the United States, about the 12th of November 1804 ; that in compliance with Mr. Pichon's instructions from his government, he had been anxiously making all the necessary arrangements for his return to France with his family ; that his detention in the United States, since the arrival of General Toureau, had solely and exclusively been owing to the business of closing his official transactions as *charge d'affaires*, and to the delay in receiving his public papers and documents, which were shipped in a vessel from Alexandria for Philadelphia, but were carried into New York, in consequence of the obstructed navigation of the Delaware : and to the impracticability of obtaining a passage for Europe, at the port of Philadelphia, for a considerable time past ; that Mr. Pichon had never, in the

(a) SHIPPEN, Chief Justice, and SMITH and BRACKENRIGE, Justices, composed the court.

Dupont v. Pichon.

slightest degree, abandoned or suspended his intention of returning to France; *323] but on the contrary, was determined to go thither, with all possible dispatch, as soon as the obstacles, which *he had stated, should be removed, and the condition of his family would permit. It was further stated in the deposition, that, during the time of Mr. Pichon's executing the functions of *charge d'affaires*, and before the arrival of General Toureau, it became his official duty to superintend and direct the equipment and supply of certain French frigates, lying in the harbor of New York; that he employed the plaintiff in that business, to make the necessary advances of money; and for his reimbursement gave him certain bills of exchange on France, drawn, however, on his private bankers; that the plaintiff well knew that Mr. Pichon acted in the premises, merely as public agent of the French republic, and is not indebted to the plaintiff on his private account; nor in any other manner, than as the drawer of the bills of exchange, which were delivered to the plaintiff, by the French consul at New York; and the fate of which Mr. Pichon had not definitively heard.(*a*)

Upon these facts, it was urged, that although no privilege was claimed for Mr. Pichon, as consul, he was entitled to privilege, as *charge d'affaires, eundo, morando et redeundo*. (1 U. S. Stat. 117–18, § 25–7; Vatt. lib. 4, c. 6, § 74–5, p. 675–6; Ib. c. 7, § 83, p. 682; Ib. c. 9, § 125, p. 726; Ib. c. 8, § 111, p. 713; Mart. 206.) That he was not bound to produce any testimonials of his diplomatic character, the notoriety of his reception by the President, being all that the nature of the case or uniform usage required; that a day's delay, in recognising the privilege of a public minister, to obtain certificates from our own government, must either compel him to give bail, or to submit to actual imprisonment; and that the precedent established on this occasion would attract the serious attention of every foreign minister and government. It, therefore, became highly important to claim and obtain the discharge, on the single ground of diplomatic privilege, without adverting to the official origin of the debt, for which the suit was instituted; and for which Mr. Pichon ought never to be deemed personally responsible.(*b*)

*Ingersoll*, *Wallace* and *Binney* disputed the extent of the privilege; and the sufficiency of the excuse for Mr. Pichon's protracted residence in the United States, after General Toureau's arrival. They insisted, that the appointment as *charge de affaires* was limited in its own terms; that his arrival and continuance in the United States were, principally, on account of *324] his consular commission; *and that, at least, proof should be produced from the secretary of state, of his reception as a minister, before he was discharged from the *capias*, upon the claim of privilege.

THE COURT were decidedly of opinion, that Mr. Pichon would be entitled to privilege as *charge de affaires*, until his return to France; but

Chief Justice SHIPPEN seemed inclined to wait for information, from the department of state, as to his actual reception by the President in that character. On its being intimated, however, that the attorney of the district had become responsible to the sheriff for Mr. Pichon's appearance, only until the sense of the court could be obtained ; and that Mr. Pichon must now, probably, submit to imprisonment under the *capias*, the judges concurred in discharging him absolutely from the process.